**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RICARDO PRADO ROJAS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-26-686-G** |
| | ) |
| **TODD BLANCHE,**[1] **et al.,** | ) |
| | ) |
| **Respondents.** | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Ricardo Prado Rojas, a noncitizen[2] and Cuban national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and

---

[1] Chris Gantt was announced as Warden of Cimarron Correctional Facility in May 2026. He replaces Scarlet Grant and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d). David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

order Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days or otherwise release him if there is no hearing within that time.

## I.     Background

Petitioner, a citizen of Cuba, entered the United States near San Luis, Arizona on November 1, 2022.  Pet. at 1; Doc. 1-3 at 1 (Notice to Appear).[3]  Upon entry, Petitioner "approached Customs and Border Patrol (CBP) and requested political asylum."  Pet. at 1. Petitioner alleges on November 1, 2022, ICE classified him as an "arriving alien," placed him into expedited removal proceedings, and charged him under 8 U.S.C. § 1225(b)(1). Pet. at 2; Doc. 1-2 at 1 (Case Confirmation).  Petitioner also alleges on November 4, 2022, ICE vacated the expedited removal arrest under § 1225(b), re-classified him, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Pet. at 2; Doc. 1-2 at 1.  ICE initiated removal proceedings through the issuance of a Notice to Appear charging him as such.  Pet. at 2; Doc. 1-3 at 1.  On November 5, 2022, Petitioner was released on his own recognizance. Pet. at 2; Doc. 1-5 at 1 (Order of Release on Recognizance).  On July 12, 2023, he filed an Application for Asylum and for Withholding of Removal.  Pet. at 2.[4]

On April 11, 2025, Petitioner received a form email informing him that the Department of Homeland Security ("DHS") was "exercising its discretion to terminate

---

[3] Page citations reference the Court's ECF pagination.

[4] Neither party has provided the Court with Petitioner's Application for Asylum and for Withholding of Removal.  Petitioner's Record of Deportable/Inadmissible Alien indicates he filed his asylum application on January 12, 2023.  Doc. 8-4 at 2.

[his] parole" and requesting that he "depart the United States immediately." Doc. 1-10 at 1 (Notice of Termination of Parole). On March 17, 2026, ICE re-arrested Petitioner at his regular ICE check-in in Oklahoma City. Pet. at 3; Doc. 8-4 at 2. Petitioner alleges he was taken into custody without notice, cause, or changed conditions despite full compliance with his conditions of release. Pet. at 3. ICE detained him pursuant to 8 U.S.C. § 1225(b)(1). Resp. at 11. There is no indication in the record that Petitioner has requested a bond hearing before an Immigration Judge ("IJ"). However, any such request would be futile because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds that those who entered the country without admission or parole are ineligible for a bond hearing.

Petitioner's Immigration Court proceedings are ongoing. In those proceedings, he sought a ruling from the IJ that his initial detention and parole were pursuant to § 1225(b)(1) and § 1182(d)(5), respectively, and that the government had unlawfully recharacterized them as being pursuant to § 1226(a). Doc. 8-5 (Motion for Parole Determination). Petitioner sought such a ruling so he could apply for adjustment of status under the Cuban Adjustment Act, 8 U.S.C. § 1255 note. DHS opposed Petitioner's motion, arguing his initial detention and release were properly governed by § 1226(a). Doc. 9-1 at 2 (Opposition to Petitioner's Motion). On April 23, 2026, the IJ ruled in favor of Petitioner, finding that "DHS granted [him] parole as a matter of law under [§ 1182(d)(5)]." Doc. 8-6 at 5 (Order of IJ).

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. Pet. at 5. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited July 13, 2026).

## II.    Petitioner's Claims

Petitioner asserts three counts in his Petition.

- **Count I: Violation of Due Process**. Petitioner alleges his re-detention violates his right to due process where he had previously been released from custody and was re-detained without any legitimate basis. Pet. at 12-15.

- **Count II: Violation of ICE Regulations.** Petitioner alleges his re-detention, absent materially changed circumstances, violates 8 C.F.R. § 236.1(c). Pet. at 13. Specifically, he alleges once ICE "has exercised [its] discretion to release a [noncitizen] on bond, it may not re-detain the individual without a legitimate and materially changed custody basis." *Id.* at 7.

- **Count III: Violation of the Administrative Procedure Act ("APA").** Petitioner alleges his re-detention without notice or materially changed circumstances is arbitrary and capricious in violation of the APA. *Id.*

He asks the Court to "issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately." Pet. at 14 (citation modified). Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[5] *Id*.

## III.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[5] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

§ 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.   <u>Analysis</u>

### A.   **Judicial estoppel does not apply.**

As an initial matter, the Court should conclude judicial estoppel does not prohibit either party from advancing arguments different than those they pursued in Immigration Court. Both parties argue the doctrine of judicial estoppel prohibits the other from making arguments inconsistent with those they advanced before the IJ in the underlying Immigration Court proceedings. Resp. at 11-12; Doc. 9 at 2-4. Judicial estoppel is an equitable doctrine "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001). The Supreme Court has cautioned judges considering whether to apply judicial estoppel that the "equitable inquiry" must be made "'on a case-by-case basis,' considering all relevant facts and circumstances." *Keathley v. Buddy Ayers Constr., Inc.*, 146 S. Ct. 1532, 1539 (2026) (quoting *Holland v. Florida*, 560 U.S. 631, 649–50 (2010)).

While there is no mechanical test for whether judicial estoppel should apply, courts generally consider three factors: (1) whether a party's position is "clearly inconsistent" with the position it took in prior litigation; (2) whether the party prevailed in its argument to the prior tribunal, such that accepting its new position "would create the perception that either the first or second court was misled"; and (3) whether allowing the party to change

its position would give it an unfair advantage in the litigation. *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007), *abrogated on other grounds*, *Keathley*, 146 S. Ct. at 1538-40.

The undersigned finds that neither party should be estopped from making legal arguments inconsistent with those it advanced before the IJ.[6] The Tenth Circuit has repeatedly "held that judicial estoppel only applies when the position to be estopped is one of fact, not one of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015) (collecting cases); *see also Powell v. Crescent Servs., LLC*, No. CIV-19-1037-G, 2020 WL 5015148, at *3–*4 (W.D. Okla. June 12, 2020) (finding judicial estoppel does not apply where a party changes her legal position but not her factual position); *Torres v. Bacon*, No. MJM-25-3961, 2026 WL 979569, at *5 (D. Md. Apr. 1, 2026) (finding judicial estoppel

---

[6] There is some question as to whether judicial estoppel can apply at all to arguments made before an IJ. In *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1242 (10th Cir. 1998), the Tenth Circuit described one of its previous cases as standing for the proposition "that claims inconsistent with others raised in administrative context[s] are not barred by judicial estoppel." However, *Webb* was decided at a time when the Tenth Circuit did not recognize the doctrine of judicial estoppel. *Id.* Later, the Tenth Circuit ruled that the Supreme Court's "binding precedent" requires it to apply judicial estoppel in certain circumstances. *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068-69 (10th Cir. 2005). While the Tenth Circuit has subsequently applied judicial estoppel to arguments made in some administrative contexts, *e.g.*, *Mathews v. Denv. Newspaper Agency LLP*, 649 F.3d 1199, 1209-10 (10th Cir. 2011) (asserting that a plaintiff who had made successful arguments before a Social Security Administration administrative law judge and then attempted to make contrary arguments in federal court represented "a paradigmatic case for judicial estoppel"), the undersigned has been unable to identify any Tenth Circuit case applying the doctrine to arguments made in Immigration Court. For this case, the undersigned assumes without deciding that the doctrine can be applied to arguments made before an IJ.

6

did not bar the government from taking inconsistent positions regarding the legal basis for a noncitizen's detention before the immigration and district courts).[7]

### B.    Section 1226(a) applies to Petitioner's detention.

While Petitioner does not raise a claim that his detention violates the Immigration and Nationality Act ("INA"), Respondents allege Petitioner is properly detained under 8 U.S.C. § 1225(b)(1).  *See* Resp. at 13-16.  The Court must first determine what statutory provision governs Petitioner's detention before it can determine whether his due process rights have been violated.   For the reasons explained below, the Court should find § 1226(a)—rather than § 1225(b)(1)—governs his re-detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been

---

[7] Respondents claim in a heading of their Response that "an Immigration Judge has found" Petitioner "is an arriving alien under § 1225(b)(1)."  Resp. at 13.  While neither party squarely addresses the issue, collateral estoppel does not require the Court to follow the IJ's ruling that Petitioner was granted parole pursuant to § 1182(d)(5).  Collateral estoppel "is designed to prevent needless relitigation" by "bar[ring] a party from relitigating an issue once it has suffered an adverse determination on the issue." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).  Collateral estoppel applies where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.*  If an IJ's decision can have preclusive effect on this Court and the latter three factors are established, collateral estoppel does not bar this Court from finding Petitioner's current detention is governed by § 1226(a).  The IJ's decision focused on which provision governed Petitioner's *initial* detention—a legally distinct question.

admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or review, unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing § 1225(b)(1)(A)(i)-(iii)). Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines that a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum.

Fundamentally, under § 1225(b)(1), a noncitizen who arrives at a port of entry and applies for admission is ordered removed "without further hearing or review" unless the noncitizen "indicates either an intention to apply for asylum" or expresses a fear of persecution. If Petitioner is subject to this "expedited removal" under § 1225(b)(1), he is not entitled to a bond hearing. But noncitizens detained under § 1225(b)(1)(B)(ii) can be paroled under 8 U.S.C. § 1182(d)(5)(A). On the other hand, § 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

Petitioner alleges his continued detention under § 1225(b)(1) is unlawful and violates his due process rights because he was previously conditionally paroled under § 1226(a).  Pet. at 10-13.  Respondents maintain Petitioner is properly detained under § 1225(b)(1).  Resp. at 13-16.

The Tenth Circuit recently rejected the statutory interpretation of § 1225 as urged by Respondents.  *Santillan Quiroz v. Mullin*, --- F.4th ---, No. 26-6019, 2026 WL 1876709, at *4-17 (10th Cir. June 30, 2026).  In *Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country."  *Id.* at *7 (citation modified).  Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)."  *Id.* at *5.  While *Santillan Quiroz* concerned a dispute over the proper interpretation of § 1225(b)(2)(A), not § 1225(b)(1), the Tenth Circuit observed that "§ 1225(b)(1) . . . is also limited to the border."  *Id.* at *13.

It is undisputed that when Petitioner was re-detained on March 17, 2026, he was in Oklahoma City, three-and-a-half years after and more than 1,000 miles away from where he initially entered the country.  Pet. at 3; Doc. 8-4 at 2; *see* Resp. at 10 (citing Form I-213, which indicates he was taken into custody in Oklahoma City).  Judges in this District have routinely found that where a "Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained during a routine check-in with immigration authorities," his "detention is mo[st] naturally characterized as

9

detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *3 (W.D. Okla. June 29, 2026); *see also Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) (finding a noncitizen detained after revocation of § 1182(d)(5) humanitarian parole is held pursuant to § 1226(a)); *Ferrer Canquiz v. Johnson*, No. CIV-26-461-HE, Doc. 11 at 4-6 (W.D. Okla. July 8, 2026) (R&R) (same) (collecting cases). Therefore, based on Tenth Circuit precedent and consistent with the approach of the majority of Judges in this District, the undersigned recommends the Court apply § 1226(a) to govern Petitioner's current detention.[8] *See Bohorquez Bravo v. Lyons*, No. CIV-26-912-R, 2026 WL 1896141, at *1 (W.D. Okla. July 1, 2026) (holding

---

[8] This conclusion is also in accord with persuasive authority in the Second, Sixth, and Eleventh Circuits, which rejected Respondents' statutory interpretation of § 1225(b)(2). *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). In contrast, the Fifth and Eighth Circuits recently applied § 1225 to similar habeas challenges, agreeing with Respondents' position. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026). Respondents have filed a cert petition to the Supreme Court. *See* Cert. Pet., *Raycraft v. Lopez-Campos*, No. 25-1415 (filed June 22, 2026).

in accordance with *Santillan Quiroz* that a similarly situated petitioner is entitled to a bond hearing under § 1226(a)). [9]

### C.    Due Process entitles Petitioner to a bond hearing.

Petitioner alleges his re-detention without changed circumstances or notice violates his due process rights because there was no "legitimate and materially changed custody basis." Pet. at 7-8. Respondents argue Petitioner has not stated a cognizable due process claim and that even if he had, he has been afforded sufficient process, because he is detained under § 1225(b)(1) and therefore not entitled to a bond hearing. Resp. at 13-16. Because § 1226(a) applies to Petitioner's detention, he is owed the due process provided to him under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the

---

[9] In the underlying Immigration Court proceedings, the parties dispute whether Petitioner's initial detention and parole were governed by § 1225(b)(1) and § 1182(d)(5) or § 1226(a). Doc. 8-6 at 4-5. Which statute governed when Petitioner first entered the country is irrelevant to whether his *current* detention is governed by § 1226(a). Because the Court need not decide whether Petitioner's initial detention and parole were pursuant to §§ 1225(b)(2)(A) and 1182(d)(5) or § 1226(a), the undersigned does not reach it, and nothing in this Report and Recommendation should be taken to disagree with the IJ's conclusion on that issue. *See* Doc. 8-6 at 4-5.

civil immigration detention context, courts consistently apply the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate the process owed a noncitizen.  *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified).  "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention.  *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026)

12

(concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford Petitioner no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest.").

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation. *See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a

13

bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)). Further, the fact Petitioner has been living in the United States for more than three-and-half years also weighs in his favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026).  Petitioner's continued detention without a bond hearing violates his due process liberty interests, and he is entitled to a prompt bond hearing under § 1226(a) before an IJ.

### D.   Petitioner's re-detention violated ICE regulations

Petitioner also alleges his re-detention absent materially changed circumstances violates 8 C.F.R. § 236.1(c).  Pet. at 13.  Section 236.1(c)(9) gives immigration officials broad discretion to revoke bond or conditional parole "at any time."   After an authorized official exercises discretion to revoke the bond or parole granted under 8 U.S.C. § 1226(a), the noncitizen is to be rearrested under the original warrant. *See id.* § 1226(b) ("The [Secretary of Homeland Security] at any time may revoke a bond or parole authorized

14

under subsection (a), rearrest the alien under the original warrant, and detain the alien."). Officials authorized to revoke a noncitizen's release are "the district director, acting district director, deputy district director, assistance district director for investigations, assistant district director for detention and deportation, or officer in charge." 8 C.F.R. § 236.1(c)(9).

Petitioner's Order of Release includes a space for an "ICE Official Cancelling Order" to sign and indicate why the Order of Release is being cancelled. Doc. 1-5 at 1; Doc. 8-5 at 20. Notably here, no record evidence shows any authorized ICE official chose to exercise their discretion to cancel Petitioner's Order of Release. *See Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1099500, at *3 (W.D. Okla. Apr. 22, 2026) ("No evidence in the record indicates that any *authorized* official chose to exercise their discretion to revoke Petitioner's release on bond. That alone is sufficient to find that proper procedures were not followed in effectuating Petitioner's detention." (emphasis in original)) (R&R), *adopted*, 2026 WL 1483557, at *2 (W.D. Okla. May 27, 2026) (adopting the R&R because Respondents waived de novo review of this issue but agreeing with the Magistrate Judge's recommendation that "ICE failed to comply with procedures").

Further, no evidence in the record indicates Petitioner was re-arrested "under the original warrant," as required under § 1226(b). *Singh*, 2026 WL 1099500, at *3 (noting "there is no evidence that Petitioner was arrested pursuant to his original warrant of arrest" in finding Respondents violated their own regulations when revoking Petitioner's release (citation modified)) (R&R), *adopted*, 2026 WL 1483557, at *2 (adopting the R&R because Respondents waived de novo review of this issue but agreeing with the Magistrate Judge's

15

finding that "ICE failed to comply with procedures"). Accordingly, the Court should find

Petitioner's re-detention violated ICE regulations.

### E.    The proper remedy is a bond hearing.

Petitioner requests the Court order that "Respondents . . . release Petitioner

immediately." Pet. at 14. Consistent with a common approach in this District, the

undersigned recommends Petitioner be afforded a constitutionally sufficient bond hearing

as a lesser remedy than release. A bond hearing is the proper remedy for a noncitizen

detained under § 1226(a). *See Santillan Quiroz,* 2026 WL 1876709 at *17 n.13; *see also*

*Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026)

("As a remedy, Petitioner requests his immediate release, but the Court concludes that a

bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene*

*v. Bush*, 553 U.S. 723, 779 (2008))). As Judge Russell acknowledged, "Petitioner is

entitled to the custody procedures provided by [§ 1226(a)]," and "the statute provides the

Department of Homeland Security the discretion to either detain a noncitizen or release the

noncitizen on bond." *Id.* (citation modified).

As such, "an individualized custody redetermination hearing would provide

Petitioner with the process he is due under the statute." *Id.* (citation modified). Further,

Petitioner has not alleged or provided evidence that he was previously detained and

released under an IJ's bond or any other provision now warranting immediate release.[10]

---

[10] In some cases, Judges in this District have ordered release for noncitizens whose earlier release was improperly revoked in the absence of changed circumstances or proper procedures. *See, e.g., Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at *1-2

Therefore, based on Petitioner's arguments, the undersigned recommends Petitioner be afforded an individualized bond hearing pursuant to § 1226(a).

### F.    The Court should deny Petitioner's APA claim.

Petitioner also argues his re-detention violates the APA. Pet. at 13. Because Petitioner's claims for relief "necessarily imply the invalidity of [his] confinement," his claims "fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citation modified); *see also id.* at 674 ("Given 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (citation modified) (Kavanaugh, J. concurring); *Soberanes*, 388 F.3d at 1310 ("Challenges to immigration detention are properly brought

---

(W.D. Okla. May 27, 2026) (ordering release where ICE improperly revoked petitioner's prior bond ordered by an immigration judge); *Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at *2 (W.D. Okla. May 4, 2026) (ordering release where ICE improperly revoked petitioner's prior humanitarian parole); *Skutar v. Mullin*, CIV-26-0036-HE, Doc. 15, at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering petitioner's immediate release and stating "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance") (citation modified). However, here Petitioner fails to allege or prove he was previously ordered released pursuant to § 1226(a) by an *immigration judge* rather than at the discretion of an ICE or customs agent. Accordingly, Petitioner has not alleged or provided evidence that the circumstances of his re-detention entitle him to release rather than a bond hearing. *See Singh v. Mullin*, No. CIV-26-471-SLP, 2026 WL 1255801, at *2 (W.D. Okla. May 7, 2026) (finding petitioner is entitled to a bond hearing but not release because he "has not provided the Court with evidence of his prior Order of Release or its terms, nor has Petitioner supported his requested form of relief with legal authority"). Therefore, the undersigned concludes Petitioner is entitled only to a bond hearing and not release.

directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687). Accordingly, the Court should deny Petitioner's request for relief under the APA.

## V.      Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **July 16, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **July 21, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of July, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE